OLLIE BREWER *v.* CITY OF POINT PLEASANT, *a Municipal Corporation, et al.*

(CC 498)

Submitted January 23, 1934.   Decided January 30, 1934.

*Somerville & Somerville* and *Hogg & Hogg,* for plaintiff.

*F. G. Musgrave, B. H. Blagg,* and *Wm. H. Rardin,* for defendants.

HATCHER, JUDGE:

The bill herein attacks the validity of an ordinance of the city of Point Pleasant, which provides for constructing and financing a self-liquidating sewer system. The circuit court sustained a demurrer to the bill and certified the question of its sufficiency to this Court.

The local situation, as alleged in the bill, is that the city, incorporated in 1915, embraces territory formerly within the towns of Point Pleasant and North Point Pleasant, respectively; that prior to 1915, the town of Point Pleasant had a sewer system but the town of North Point Pleasant had none

and the section formerly included within its boundary has remained without a sewer system unto the present time; that the plaintiff resides in the section which was formerly within the town of Point Pleasant, and uses the sewer in that section; that the sewer is adequate to his needs; yet the ordinance proposes to require him to pay for use of the new system. Exhibited with the bill, however, is the application of the city to a federal bureau for the loan of money with which to construct the sewer. The application contains the following statement: "The old section of town (i.e. town of Point Pleasant) has had an inadequate sewer system for a period of thirty years. These sewers were laid before the streets were paved and there is not a manhole on the entire system. This has led to a very unsatisfactory condition, the present system being little more than worthless. * * * The only solution for this is * * * the rebuilding of present sewers," etc. Consequently, the exhibit discountenances the plaintiff's position that he will be required to pay for unneeded service.

The ordinance authorizes the city to construct a sewage system according to certain plans and specifications, upon money to be borrowed from the Federal Emergency Administration of Public Works. The loan is to be evidenced by an issue of bonds which shall not constitute an indebtedness of the city, but which are to be paid for solely from revenues to be derived from rates charged against every "metered water connection which uses water from the city water works system and which also uses the said sewage works system." The ordinance was passed pursuant to chapter 25, Acts of the Legislature, First Extraordinary Session 1933.

1. The plaintiff makes the following contentions against the constitutionality of this chapter: (a) that the Act was not within the purview of the executive proclamation calling the Extraordinary Session; (b) that the objects of the Act are not sufficiently expressed in the title; (c) that the issuance of bonds for the sewer will create an unlawful indebtedness of the city; and (d) that the Act is an illegal delegation of legislative powers.

The gubernatorial proclamation called for legislation to meet the existing emergency "by permitting municipalities to borrow money from the Reconstruction Finance Corpora-

tion for self-liquidating projects." It is our duty to hold the Act to be within the proclamation if by "any reasonable construction of the language of the proclamation the subject legislated upon * * * is embraced therein." *State* v. *Shores,* 31 W. Va. 491, 498, 7 S. E. 413. Accord: *Road Com.* v. *Bridge Com.,* 112 W. Va. 514, 517, 166 S. E. 11. It is true that the proclamation specified a loan from the Reconstruction Finance Corporation, and the Act makes no reference thereto but merely provides for financing the project by funds derived from "the issuance of revenue bonds of the municipality." The paramount idea in the proclamation, however, was that permission should be granted municipalties to finance "self-liquidating projects." In other words, the projects themselves were assuredly of more importance to the gubernatorial mind than the identity of who should underwrite the projects. We are of opinion that reasonable construction would include the Act within the purview of the proclamation.

The title of chapter 25 is as follows: "AN ACT to authorize municipal corporations and/or sanitary districts to construct, own, equip, operate, maintain and improve works for the collection and/or treatment, purification and disposal of sewage; to authorize charges against owners of premises for the use of such works and to provide for the collection of same; to authorize municipal corporations and/or sanitary districts to issue revenue bonds payable solely from the revenues of such works and to make such bonds exempt from taxation; to authorize contracts for the use of such works by other municipal corporations and political subdivisions, and charges against owners of premises therein served thereby and a lien against such premises." The Act directs the appointment of a sanitary board by the "governing body" of the municipality and confers on such board certain powers in relation to the construction, etc., of the works. The Act also provides for the collection of revenue to retire the bonds and for the execution of a "trust indenture" to secure them. The plaintiff contends that the title of the Act does not embrace the above three objects. "When the principal object is fairly expressed in the title, it is not necessary to include in the title everything which by fair intendment may fall within the purview of the principal object. The title need not be a complete index or abstract of the contents of the act." *Bates* v.

*Commission,* 109 W. Va. 186, 190, 153 S. E. 305. The principal object of chapter 25—authority to construct and finance municipal sewers—is fairly expressed. The Act specifically confers authority to make and collect charges for the use of the sewer. The other two objects may be treated as ''incidental or auxiliary objects'', which are germane to the principal object. They are therefore lawfully included in the Act without titular specification. *Casto* v. *Board,* 94 W. Va. 513, 520, 119 S. E. 470.

Plaintiff contends that the issuance of bonds to pay for the project will create an unlawful indebtedness of the municipality. Section 9 of the Act declares that the bonds ''shall not be a corporate indebtedness of such municipality,'' and section 10 requires that ''The bonds shall contain a statement on their face that the municipality shall not be obligated to pay the same or the interest thereon except from the special fund provided from the net revenues of the work.'' Section 16 provides that charges may be made against the owner of property which is connected with and uses the sewer, and that ''Revenues collected pursuant to this section shall be deemed the revenues of the works.'' Section 21 limits the rights of the bondholders in case of default to the collection and application, etc., of rates chargeable to patrons of the works. The provisions of the Act become a part of the contract between the municipality and the bondholders as effectually as if written verbatim in the bonds. The bondholders are bound by their contract in this instance just as firmly as in any other legal contract. Consequently we must hold that the bonds do not create a corporate indebtedness of the municipality. See *Bates* v. *Commission, supra,* pp. 188 and 189, where Judge Lively said: ''The great weight of decisions is that bonds of a state or political subdivision payable solely out of revenue derived from a utility of a public nature acquired by the money derived from the bonds do not create debts within the constitutional inhibition against the contraction of public debt.'' Many cases are there cited. Accord: Cooley on Taxation (4th Ed.), sec. 29; 12 C. J., subj. Const. Law, sec. 414.

Plaintiff contends that ''The entire Act involves the illegal delegation of legislative authority'' to the municipality. While *police power* as such is not mentioned in the Act, the authority

therein granted the municipalities is a grant of the police power of the state. This is a legitimate delegation of legislative power. *Fellows* v. *Charleston*, 62 W. Va. 665, 667-8, 59 S. E. 623; 12 C. J., *supra*, sec. 418.

2. The plaintiff also makes several contentions against the regularity of the ordinance. It was published (the second time) in local newspapers on November 30th and December 7th, and contained a notice that any one interested could appear before the council on December 20th, etc., and present protests. Plaintiff admits that the above publication complied with chapter 25 (sec. 6) but contends that the publication was incomplete under chapter 27, Acts First Extra. Session Legislature 1933. The latter Act provides that ten per cent of the registered voters may protest such an ordinance within fifteen days after the publication required by law. When the council met on December 20th pursuant to the published notice, it deferred action and specifically extended the time in which protests could be made until December 23rd. The last date was more than fifteen days after the publication was complete. The extension met the requirement of chapter 27. Moreover, no one protested.

The ordinance declares that ''a statutory mortgage lien'' exists in favor of the bondholders. Plaintiff contends that the declaration contravenes section 14 of chapter 25, which forbids mortgaging the works. This contention is well taken. But the declaration may be regarded as surplusage and held not to affect the validity of the remainder of the ordinance.

And finally, plaintiff protests the rates fixed by the ordinance. The ordinance with notice of a public hearing was duly published as required by the Act. The plaintiff should have sought relief primarily at the public hearing before the council. He neglected to avail himself of that opportunity and offers no excuse for his neglect. He cannot now ''invoke the equitable powers of the courts for redress.'' *Engineering Co.* v. *Gallaher*, 101 W. Va. 110, 116-7, 132 S. E. 866, 869.

The ruling of the circuit court is affirmed.

*Affirmed.*