687 S.E.2d 353

**L.H. JONES EQUIPMENT COMPANY, a West Virginia corporation, Plaintiff,**

v.

**SWENSON SPREADER LLC, Defendant.**

**No. 34745.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2009.

Decided Nov. 18, 2009.

Ami M. Smith, Esquire, Christi R. Stover, Esquire, Steptoe & Johnson, PLLC, Morgantown, WV, for Plaintiff.

Sandra K. Law, Esquire, Schader, Byrd & Companion, PLLC, Wheeling, WV, W. Michael Hanna, Esquire, Squire, Sanders & Dempsey, Cleveland, OH, for Defendant.

BENJAMIN, Chief Justice.

This case is before the Court upon the February 9, 2009, Order from the United States District Court for the Southern District of West Virginia, which certified a question pursuant to West Virginia Code § 51–1A–3 (2005)[1]. The question certified to this Court is as follows:

> Recognizing that Article 6, Section 30, of the West Virginia Constitution provides that "[n]o act hereafter passed shall embrace more than one object, and that shall be expressed in the title," and that an act shall be void as to any object in it which is not so expressed, and also acknowledging the long-standing precedent of the Supreme Court of Appeals of West Virginia that "[t]he title of an act should be construed most liberally and comprehensively in order to give validity to all parts of the act," Syl. Pt. 2, *Brewer v. City of Point Pleasant*, 114 W.Va. 572 [172 S.E. 717] (1934), and that "[w]hen the principal object of an act is fairly expressed in its title, other incidental or auxiliary objects which are germane to the principal object may be included in the act without titular specification," *id.* at Syl. Pt. 3, is the West Virginia Farm Equipment Dealer Contract Act, W. Va.Code § 47–11F–1, *et. seq.* ("the Act"), limited in its scope and application to

"dealers" and "suppliers" of "farm equipment," as stated in the Act's title, or do the protections of the Act extend to "dealers" and "suppliers" of "farm, construction, industrial or outdoor power equipment or any combination of the foregoing," as provided in the definition of "dealer," found in the Act at § 47–11F–2?

By order dated March 12, 2009, this Court accepted the certified question and docketed the matter for resolution. As set forth more fully below, we find that the West Virginia Farm Equipment Dealer Contract Act is not limited in its scope and application to "dealers" and "suppliers" of "farm equipment" only, as might mistakenly be inferred by reference only to the Act's statutory short title. Rather, the protections of the Act extend to "dealers" and "suppliers" of "farm, construction, industrial or outdoor power equipment or any combination of the foregoing," as provided in the definition of "dealer," found in the Act at West Virginia Code § 47–11F–2 (1989), consistent with the actual full title of the Act.

## I. Factual and procedural background

This matter arises from a proceeding in the United States District Court for the Northern District of West Virginia instituted by L.H. Jones Equipment Company, a West Virginia corporation (hereinafter referred to as the "L.H. Jones"). L.H. Jones sued Swenson Spreader, LLC, (hereinafter referred to as "Swenson") a limited liability corporation under the laws of the State of Ohio, on several theories, including violations of the West Virginia Farm Equipment Dealer Contract Act.[2] Other theories alleged breach of contract, violations of the West Virginia Uniform Commercial Code and tortious interference with a business relationship.

---

**1.** West Virginia Code § 51–1A–3 (2005) provides, in pertinent part:

The Supreme Court of Appeals of West Virginia may answer a questions of law certified to it by any court of the United States or by the highest appellate court or the intermediate appellate court of another state or of a tribe of Canada, a Canadian province or territory, Mexico or a Mexican state, if the answer may be determina-

tive of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

**2.** The West Virginia Farm Equipment Dealer Contract Act is codified in West Virginia Code § 47–11F–1 *et seq.*

The district court acknowledged in its certification order that the case was at an early stage in the proceedings and that no discovery had been undertaken. The district court's certification order stated that the question to this Court was certified so that the question of law could be resolved prior to continuing with the rest of this case. The relevant facts[3] as stated in the certification order to this Court, are as follows:

The defendant, Swenson, designs and manufactures spreaders, liquid spray de-icing systems and other equipment and products. The plaintiff, L.H. Jones, is a retailer who sells snow plows, snow plow attachments, spreaders and related parts and equipment. From at least early 1982, until September 10, 2007, L.H. Jones was an authorized distributor of Swenson's products in West Virginia.

In its complaint filed in the district court, L.H. Jones alleges that since at least 1982, as an authorized dealer of Swenson equipment, it had been awarded contracts with the State of West Virginia to supply the State with Swenson-brand ice removal equipment and replacement parts. L.H. Jones alleges that in 2005 and 2007, following a competitive bidding process, the State of West Virginia awarded L.H. Jones two open purchase orders to supply it with two kinds of Swenson spreaders capable of spreading salt or other anti-skid material, which the State would use in highway and road maintenance.

L.H. Jones alleges that after being awarded these open purchase orders, on September 10, 2007, Swenson terminated it as an authorized distributor of Swenson products. As a result, L.H. Jones allegedly was unable to fulfill its orders from the State of West Virginia.

Swenson does not dispute that it sold spreaders and other ice removal equipment and parts to L.H. Jones or that it terminated its relationship with the plaintiff on September 10, 2007. Swenson does dispute that the spreaders in question in this lawsuit are the type of equipment covered by the Act, and thus contends that L.H. Jones' claims under the Act should be dismissed as a matter of law.

## II. Standard of review

We have consistently recognized that " '[a] *de novo* standard is applied by this court in addressing the legal issues presented by a certified questions from a federal district or appellate court.' Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998)." Syllabus point 2, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000). *See also* Syl. Pt. 1, *Feliciano v. 7-Eleven, Inc.*, 210 W.Va. 740, 559 S.E.2d 713 (2001); Syl. Pt. 1, *T. Weston Inc. v. Mineral County*, 219 W.Va. 564, 638 S.E.2d 167 (2006). Accordingly, we proceed with plenary review of the legal issues arising from the certified question.

## III. Discussion

### a. The West Virginia Farm Equipment Dealer Contract Act

At the heart of this certified question is interpretation of W. Va.Code § 47–11F–1, *et seq.* (1989), also known by its statutory short title, the West Virginia Farm Equipment Dealer Contract Act, (hereinafter referred to as the Act), and its applicability to the agreement between L.H. Jones and Swenson. The Act provides statutory guidance regarding termination of contracts or agreements between dealers and suppliers of farm, construction, industrial and outdoor power equipment. The Act requires certain notice requirements from suppliers to dealers when terminating their agreements,[4] requires suppliers to repurchase dealer inventory when

---

3. This Court is bound by the facts contained in the district court's certification order. West Virginia Code § 51–1A–6 (year) states as follows:
   (a) A certification order must contain:
   (1) The question of law to be answered;
   (2) The facts relevant to the question, showing fully the nature of the controversy out of which the question arose;
   (3) A statement acknowledging that the receiving court may reformulate the question; and

(4) The names an addresses of counsel of record and unrepresented parties.
   (b) If the parties cannot agree upon a statement of facts, then the certifying court shall determine the relevant facts and shall state them as part of the certification order.

4. W. Va.Code § 47–11F–3 (1989).

the contractual relationship has terminated,[5] provides exceptions to the repurchasing requirements upon termination of a contract or agreement[6] and provides for civil remedies for breach of the Act, including monetary damages, attorney's fees and costs as well as interest.[7]

For the purposes of the Act, the word dealer:

[M]eans any person, firm, partnership, association, corporation or other business entity engaged in the business of selling, at retail, farm, construction, industrial or outdoor power equipment or any combination of the foregoing and who maintains a total inventory of new equipment and repair parts having an aggregate value of not less than twenty-five thousand dollars at current net price and who provides repair service for such equipment.

W. Va.Code § 47–11F–2(3) (1989). A supplier is defined as "a wholesaler, manufacturer or distributor who enters into an agreement with a dealer and who supplies inventory to such dealer." W. Va.Code § 47–11F–2(6) (1989). The Act further defines the terms "farm", "construction," "industrial," or "outdoor power," when used to refer to tractors, implements, attachments or repair parts, as having "the meaning commonly used and understood among dealers and suppliers subject to this article." W. Va.Code § 47–11F–2(b) (1989).

The Act was codified in 1989 and was passed by the West Virginia Legislature on March 15, 1989. The bill went into effect 90 days from its passage. As contained in section one itself, the short title of the Act is the "West Virginia Farm Equipment Dealer Contract Act." W. Va.Code § 47–11F–1 (1989). The actual title to the bill, however, as set forth in the legislative bill that was passed, is as follows:

An Act to amend chapter forty-seven of the code of West Virginia, one thousand nine hundred thirty-one, as amended, by adding thereto a new article, designated article eleven-f, *relating to the contractual relationship between farm, construction,* *industrial or outdoor power equipment retail dealers and their suppliers generally;* providing a short title by which the article may be known and cited; providing certain definitions of terms used with respect thereto; requiring certain notices to be given by one party to such contracts to the other party thereto with respect to the termination of any contractual arrangement between them and the time requirements with respect to such notice; providing for certain exceptions with respect to such terminations; the manner, form and content of such notifications; requiring the supplier to repurchase dealer inventory at the time of such termination and the terms of such repurchase; providing exceptions with respect to such repurchase requirements; providing for certain rules with respect to the applicability of the uniform commercial code; providing certain rules with respect to outstanding warranty claims at the time of termination; certain civil remedies against the suppliers available to such dealers and the amounts of recovery with respect to actions brought in such cases; providing for the applicability of certain other legal remedies; and providing for a period of limitations with respect to any actions brought pursuant to said article.

1989 W. Va. Acts 1304 (emphasis added).

### b. Arguments of the Parties

Swenson argues that the Act as passed by the West Virginia Legislature and codified in the W. Va. Code should be limited to dealers of farm equipment because of its codified short title. To interpret the Act more broadly, Swenson contends, would be violative of Article VI, Section 30 of the West Virginia Constitution.

Article VI, Section 30 of the West Virginia Constitution states, in pertinent part:

No act hereafter passed shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so

---

**5.** W. Va.Code § 47–11F–4 (1989)

**6.** W. Va.Code § 47–11F–7 (1989).

**7.** W. Va.Code § 47–11F–8 (1989).

expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act.

Swenson argues that the purpose of the statute must be expressed in its title and, that fundamental tenets of statutory construction support their contention that the Act applies only to dealers of farm equipment.

L.H. Jones counters that the Act should be construed to extend to the contractual relationship between it and Swenson Spreader. First, L.H. Jones argues that the word "dealer" is plainly and expansively defined as meaning any business entity "engaged in the business of selling, at retail, farm, construction, industrial or outdoor power equipment or any combination of the foregoing." Second, L.H. Jones assets that the intent of the West Virginia Legislature was clearly expressed in the Act's original title as contained in the original bill passed by that body, not in the short title as argued by Swenson. It is this original longer title to which Article VI, Section 30, of the West Virginia Constitution applies, according to L.H. Jones. Finally, L.H. Jones submits that familiar rules of statutory construction support the result that the Act extends beyond dealers of farm equipment. Collectively, L.H. Jones argues for an expansive definition of the terms "dealer" and "supplier" under the Act.

### c. Discussion

■ This Court's long-standing rules of interpretation begin with the question of whether the statute being interpreted is clear and without ambiguity. Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation. Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

■ It is also well established that every word in a statute should be given its typical meaning. "It is presumed that the legislature had a purpose in the use of every word, phrase and clause found in a statute and intended the terms so used to be effective, wherefore an interpretation of a statute which gives a word, phrase or clause thereof no function to perform, or makes it, in effect, a mere repetition of another word, phrase or clause thereof must be rejected as being unsound, if it be possible so to construe the statute as a whole, as to make all of its parts operative and effective." Syllabus point 7, *Ex parte Watson*, 82 W.Va. 201, 95 S.E. 648 (1918).

■ Finally, our rules of construction mandate that the intent of the legislature be acknowledged when interpreting a statute. " ' "The primary object in construing a statute is to ascertain and give effect to the intent of the legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syllabus point 2, *Anderson v. Wood*, 204 W.Va. 558, 514 S.E.2d 408 (1999)." Syllabus point 2, *Expedited Transportation Systems, Inc. v. Vieweg*, 207 W.Va. 90, 529 S.E.2d 110 (2000).

■ If, however, there is ambiguity in a statute, this Court may look to the title of the Act of the Legislature as a means of determining legislative intent. In construing an ambiguity in a statute, this Court will examine the title to the Act of the Legislature as a means of ascertaining the legislative intent, and the overall purpose of the legislation. Syl. Pt. 2, *City of Huntington v. State Water Comm'n*, 135 W.Va. 568, 64 S.E.2d 225 (1951).

■ Here, the clear and unambiguous expression of the Legislature's intent in the title of the Act is that this article relates to "the contractual relationship between farm, construction, industrial or outdoor power equipment retail dealers and their suppliers generally." 1989 W. Va. Acts 1304, *supra*. This expression in turn comports with the plain language of the statute, especially the definitions of "dealer" and "supplier" found at W. Va.Code § 47–11F–2 (1989). The statute defines "dealer" simply and concisely as "any person, firm, partnership, association, corporation or other business entity engaged in the business of selling at retail, farm, construction, industrial or outdoor power equipment ..." W. Va.Code § 47–11F–2

(1989). Thus we conclude that the Legislature's intent in passing the Act was to create a mechanism for dealing with the contractual relationships between suppliers and dealers of certain categories of equipment, not just farm equipment as mentioned in the short title. We find that the more expansive applicability found in the bill's actual full title, rather than the more restrictive applicability found in the statutory short title, to be determinative to this certified question.

■ We do not agree with Swenson's concerns that the title of the Act is violative of the constitutional protections requiring that the object of an act be expressed clearly in its title. When reviewing the actual full title of the bill, as presented to the Legislature, it is clear that the title sufficiently expresses the subject matter of the act. Thus, any concerns about unintended provisions being read into this bill are not apparent, because the title of the Act as viewed by the Legislature when the statute was passed was sufficient to impart to the reader the Act's object. Thus, the said constitutional provision is designed to ensure that legislators know upon what they are voting. The actual full title of the bill serves this purpose.

In the case at bar, we conclude that any ambiguity within the statute is not so much between the contents of the statute but between the statutory short title of the act and the definitions contained therein. The reliance of Swenson upon the statutorily created short title of the Act is misplaced, as the actual full title of the Act is in full agreement and compatible with the provisions contained therein.

## IV. Conclusion

In the interest of providing consistent guidance to the district on the question of law so presented, we reformulate [8] and answer the certified question as follows:

The West Virginia Farm Equipment Dealer Contract Act is not limited in its scope and application to "dealers" and "suppliers" of "farm equipment" only, as might mistakenly be inferred by reference only to the Act's statutory short title. Rather, the protections of the Act extend to "dealers" and "suppli-

ers" of "farm, construction, industrial or outdoor power equipment or any combination of the foregoing," as provided in the definition of "dealer," found in the Act at West Virginia Code § 47–11F–2 (1989), consistent with the actual full title of the Act.

Certified question answered.

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

KETCHUM, J., dissenting:

I respectfully dissent from the majority.

Swenson Spreader is not a farm equipment dealer. It is a manufacturer of salt spreaders and other products used to control ice buildup on roads and highways. Nevertheless, the majority finds that Swenson Spreader is bound by the West Virginia Farm Equipment Dealer Contract Act as plainly titled in *W.Va.Code*, ch. 47, art. 11f. In fact, ch. 47, art. 11f, § 1, states: "This article shall be known and may be cited as the 'West Virginia Farm Equipment Dealer Contract Act.'" Even the introductory provision found in the 1989 Acts of the Legislature, relied on by the majority, contemplates the title Farm Equipment Dealer Contract Act "by which the article may be known and cited."

The title of the Act, as thus set forth in our Code, puts the public, business owners and lawyers researching our statutory indexes on notice that the Act is about farm dealers. Consequently, it is difficult to conceptualize why a person searching through our statutory indexes to determine the law relating to their highway salt spreading business would understand that an Act titled "Farm Equipment Dealer Contract Act" could apply to highway salt spreaders.

Under the reasoning of the majority, a person so researching our statutory indexes in the Code cannot rely on the plain title of an Act but, instead, must read each section of every Act in West Virginia to be sure he or she is complying with West Virginia law. Researching applicable law should not be an endurance contest. Nor should individuals be expected to second guess the titles of Acts placed in the Code by the Legislature.

---

**8.** W. Va.Code § 51–1A–4 authorizes this Court to reformulate questions certified to it.

I contend that our State constitutional provision (Article 6, Section 30) plainly requires that a statute's purpose be expressly codified in its listed title. It is only fair that citizens and businesses be informed of the purpose of an Act in the Act's title. Untoward results arise when a title in our State Code misleads interested parties about the scope and reach of an Act or statute. I submit that Swenson's lawyers will now have to read this State's entire chapter entitled and indexed as "school law" to be sure that there is no paragraph within relating to highway salt spreaders.

In West Virginia, under the result reached by the majority, we are required when researching "horse manure" to search our indexes for "draft animals." We can no longer rely on the plain title in the State Code promulgated by the Legislature.

I, therefore, dissent.