In the Matter of the Application of the CITY OF NEW YORK, Respondent, to Acquire Title to Lands Required for Approaches to a Bridge over the Harlem River at West One Hundred and Forty-fifth Street and East One Hundred and Forty-ninth Street, in the City of New York.

HENRY LEWIS MORRIS et al., Appellants.

NEW YORK, CITY OF — TITLE TO LANDS TAKEN FOR CONSTRUCTION OF BRIDGE OVER THE HARLEM RIVER UNDER L. 1895, CH. 986. Under chapter 986 of the Laws of 1895, authorizing the construction of a bridge over the Harlem river in the city of New York, and empowering the city to acquire title in fee to any land which it may deem necessary for the purpose of the construction of the bridge and approaches with the necessary abutments or arches, and to acquire any right or easement which it may be necessary to take for temporary purposes, the city had the power to institute a single proceeding for the double purpose of building a bridge with its structural approaches and at the same time widening and straightening the streets leading thereto; so far as the lands taken were necessary for the first purpose, the city acquired title thereto in fee simple absolute, but as to those taken for the other purposes it acquired a title in trust for street purposes only.

*Matter of City of New York*, 74 App. Div. 197, affirmed.

(Argued February 9, 1903; decided February 24, 1903.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 10, 1902, which reversed an order of Special Term confirming the report of commissioners of estimate and assessment herein.

The city of New York, acting under the authority of chap-

ter 986 of the Laws of 1895, as amended by chapter 719 of the Laws of 1900, built a bridge across the Harlem river, extending from West 145th street on one side, to East 149th street on the other. Damages were awarded by the commissioners to the owners of property affected by the building of the approaches to the bridge on both sides of the river, and the widening of those streets necessitated thereby, not only for property actually taken, but also consequential damages, upon the theory that the title acquired by the city to the bed of the streets on each side of the structural approaches to the bridge was an absolute fee, free from any trust for street purposes. The city of New York objected to the award of damages on this basis, and appealed to the Appellate Division of the Supreme Court from the order of the Special Term confirming the report of such commissioners. The Appellate Division reversed the report of the commissioners and directed it to be returned to them for correction. An appeal was thereafter allowed to this court, upon the following certified question: "*Was all the land acquired by the city of New York in these proceedings taken in fee simple absolute?*"

Chapter 986, L. 1895, authorized the building of the bridge and approaches in question, and by section 4 provided: "With the consent and approval of the board of estimate and apportionment first had and obtained, the commissioners of public parks, for and in behalf of the mayor, aldermen and commonalty of the city of New York, are hereby authorized to acquire *title in fee* to any land *which they may deem necessary for the purpose of the construction of the said bridge and approaches, with the necesssary abutments or arches as aforesaid,* and to acquire any right or easement which it may be necessary to take for temporary purposes, and to that end the said commissioners may make application to the Supreme Court in the first judicial district for the appointment of commissioners of estimate, specifying in such application the lands or easements sought to be acquired for the purpose aforesaid. The provisions of law relating to the taking of private property for public streets or places in the

said city are hereby made applicable as far as may be necessary to the acquiring of the said land as aforesaid."

By ch. 719, L. 1900, the commissioner of bridges of the city of New York, who had succeeded to the powers and duties of the commissioners of public parks in respect to the building of this bridge, was authorized to submit amended plans for the bridge and approaches, which plans were to provide for a bridge not more than ninety feet in width. In the former act the width of the bridge was not designated. The plans finally adopted by the city authorities for the building of the bridge, together with suitable approaches, included the taking of two strips of land, each twenty-five feet wide, running from Lenox avenue to the Harlem river, on the north and south sides of West 145th street, in the borough of Manhattan; the taking of a piece of land along the north side of East 149th street, in the borough of the Bronx, from the Harlem river to River avenue, of a width of about 50 feet, and cutting through from the corner of River avenue and East 149th street to Exterior street, so as to form a continuation thereof and an approach to the new bridge; the taking of a strip of land along the west side of River avenue up to the south side of East 149th street, to widen River avenue and form a broader approach to the bridge; and the taking of two triangular pieces of land between River avenue and Gerard avenue, on either side of East 149th street, so as to widen that avenue. The specifications for the bridge structure show an inclined elevated causeway, about 75 feet wide, running from Lenox avenue along the middle of West 145th street to the bridge proper at the Harlem river, and on the Bronx side from Exterior street as extended, and River avenue along the middle of East 149th street, as widened, to the river. At the bulkhead there was an elevation of 30 feet. West 145th street originally measured 100 feet in width, so that the structure lies entirely within it; and, with the widening of that street by 25 feet on either side, there is now a space about 37 feet on each side of the causeway or, deducting the sidewalk, which measures 9 feet, the street surface is

about 26 feet in width.   In East 149th street the structure on the north side rests upon land taken for that purpose, while the south side of the causeway is in the original street.   Here, as in 145th street, sidewalks and spaces of the same dimensions are provided between the structure and the house lines. These side streets leading down to the river are to be paved, and plans were shown for placing in them sewers, with branches for the house lots, which sewers are to take the place of the sewer which originally ran through the middle of the streets.

The proceeding was instituted by the board of public improvement on February 27th, 1901, pursuant to sections 970 and 990 of the street opening title of the charter of Greater New York.   Title to the land required for the widening of W. 145th street vested in the city October 8th, 1900, and that required for the same purpose on E. 149th street, River avenue and the change of location of Exterior street, on April 15th, 1901.

*Ernest Hall* and *Thomas S. Bassford* for Henry Lewis Morris et al., appellants.   As the city will acquire a fee in the land taken for the approaches to the One Hundred and Forty-ninth street bridge, the abutting owners will acquire no right to a new frontage thereon.   Hence, they are entitled to consequential damages to the residue of their land, which is separated by the bridge approach from existing thoroughfares.   (*Heyward* v. *Mayor, etc.,* 7 N. Y. 314 ; 2 Dillon on Mun. Corp. [4th ed.] § 589 ; *Beach* v. *Haynes,* 12 Vt. 15 ; *K. C. F. Ins. Co.* v. *Stevens,* 101 N. Y. 411 ; *Gearty* v. *Mayor, etc.,* 49 How. Pr. 33 ; *People* v. *City of Albany,* 4 Hun, 675 ; *Sweet* v. *B., N. Y. & P. Ry. Co.,* 13 Hun, 643 ; *Matter of City of Amsterdam,* 96 N. Y. 351 ; *De Camp* v. *H. R. Co.,* 47 N. J. L. 43 ; *Heard* v. *City of Brooklyn,* 60 N. Y. 242 ; *Strong* v. *City of Brooklyn,* 68 N. Y. 1.)

*Henry H. Sherman* for the Mott Haven Company, appellant.   The taking of land herein was not in anywise a taking

for a "street." A "bridge approach" is not a "street." The title taken was a "fee" without qualification. (*Heyward* v. *Mayor, etc.*, 7 N. Y. 314; 2 Dillon on Mun. Corp. [4th ed.] § 589; 2 Kent's Comm. 281; *Beach* v. *Haynes*, 12 Vt. 15; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *K. C. F. Ins. Co.* v. *Stevens*, 101 N. Y. 411; *People* v. *City of Albany*, 4 Hun, 675; *Gearty* v. *Mayor, etc.*, 49 How. Pr. 33; *Sweet* v. *Railway Co.*, 13 Hun, 643; 79 N. Y. 293; *C. I. Co.* v *Mayor, etc.*, 166 N. Y. 92.) The fee title herein acquired is in law a fee simple absolute. (*Jackson* v. *Van Zandt*, 12 Johns. 169; 1 Washb. on Real Prop. [6th ed.] 69; *Jecko* v. *Taussig*, 45 Mo. 169; *Sweet* v. *B., etc., Ry. Co.*, 13 Hun, 647.) As the city under chapter 986 of the Laws of 1895 acquired a fee in the land taken for this approach, the abutting owners acquired no right to the new frontage on the approach. Hence they were entitled to consequential damages to the remainder of their land, which lies between the bridge approach and the Harlem river, and which is separated by a bridge approach from the previously abutting streets — River avenue and One Hundred and Forty-fourth street. (*A. N. R. R. Co.* v. *Lansing*, 16 Barb. 71; *Matter of U. R. R. Co.*, 56 Barb. 456.)

*John C. Shaw* for Mary G. Pinkney, appellant. Under the statute authorizing the building of the bridge and the acquiring of title to the approaches the city acquired an absolute title in fee. (*Heyward* v. *Mayor, etc.*, 7 N. Y. 314; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 239; *Gilbert* v. *E. R. R. Co.*, 36 Hun, 458; *Hochalter* v. *E. R. R. Co.*, 31 N. Y. S. R. 112; *Lahr* v. *M. E. R. R. Co.*, 104 N. Y. 268.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly, John P. Dunn* and *Thomas C. Blake* of counsel), for respondent. Only the inclined roadway from the east side of Lenox avenue in One Hundred and Forty-fifth street to the deck of the bridge at the abutment on the westerly side of Exterior

street on the westerly bank of the Harlem river and the inclined roadway from the westerly side of River avenue or Exterior street in One Hundred and Forty-ninth street as widened to the deck of the bridge at the abutment on the easterly side of the Exterior street on the eastern bank of the Harlem river can be properly termed a bridge approach. (*Carpenter* v. *City of Cohoes*, 81 N. Y. 20; *Ottendorfer* v. *Agnew*, 13 Daly, 16; *The Clinton Bridge*, 10 Wall. 462; *Swanzey* v. *Somerset*, 132 Mass. 132; *Penn. Tp.* v. *Terry County*, 78 Penn. St. 457; *Tinkham* v. *Stockbridge*, 64 Vt. 480.) Chapter 986, of the Laws of 1895, which first authorized the acquisition of title in fee to the lands required for the approaches to this bridge, contemplated the acquisition of the same title to the lands taken in this proceeding as the city of New York takes for its public streets, namely, a fee in trust. (2 Dillon on Mun. Corp. [4th ed.] § 728; 2 Smith on Mun. Corp. § 1513; 1 Lewis on Em. Domain [2d ed.], 188, 671; *Fairchild* v. *St. Paul*, 46 Minn. 540; *Conklin* v. *N. Y., O. & W. R. R. Co.*, 102 N. Y. 197; *Talbot* v. *N. Y. & H. R. R. Co.*, 151 N. Y. 155; *Matter of Grade Crossing Comrs.*, 6 App. Div. 327; 59 App. Div. 503; 154 N. Y. 551; 166 N. Y. 74; *Murphy* v. *Leggett*, 164 N. Y. 126; *Sweet* v. *B., etc., R. R. Co.*, 79 N. Y. 300; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 239; *W. Cemetery* v. *P. P. & C. I. R. R. Co.*, 68 N. Y. 594; *N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 551.) The title to the lands acquired for the purpose of this improvement is a fee in trust taken pursuant to the provisions of title 4, chapter 17 of the New York city charter, providing for the acquisition of title to streets. (L. 1897, ch. 378.) The fact that the lands acquired in this proceeding are stated in the title of the proceeding and in the resolutions of the board of street opening and improvement in reference thereto as lands required for the approaches to the bridge does not negative the existence of the usual street easements over the lands not actually occupied by the elevated causeway, the really proper bridge approach. (Elliott on Roads [2d ed.], § 30; *Matter of Poughkeepsie Bridge*, 108 N. Y. 483; *Mason* v. *B. C. & N.*

*R. R. Co.*, 35 Barb. 373; *H. & D. C. Co.* v. *N. Y. & E. R. R. Co.*, 9 Paige, 323.)

WERNER, J. The majority of the commissioners of estimate, and the learned justice who confirmed their report, proceeded upon the theory, very tersely expressed at Special Term, that the act authorizing the bridge approach did not provide for the taking of land in trust for the purpose of a public street or avenue, and, therefore, the city did not take any of the land under an implied trust to use it for street purposes. The award of both consequential and actual damage was, of course, the logical corollary to that interpretation of the statute. The learned Appellate Division took a broader view of the whole matter and held that the statute should be so construed as to effectuate the evident legislative intent, which was that the city should only take an absolute fee in such lands as should be necessary for the purpose of providing structural approaches to the bridge; and that in the other lands condemned in the same proceeding, for the widening of streets designed to make the bridge with its structural approaches more accessible, the city acquired a fee burdened with a trust to keep and use the land for street purposes. We agree with the Appellate Division. The statute under which the proceedings herein were instituted expressly declares that "the provisions of law relating to the taking of private property, for public streets or places in the said city, are hereby made applicable as far as may be necessary to the acquiring of the said land as aforesaid." While it is true that the statute as well as the petition and other papers in the proceedings refer to the "bridge and approaches," it is clearly shown by the plans and maps on file that the term "approaches" is applied not only to the physical structures immediately connected with the roadway of the bridge, but to those contiguous and converging streets and avenues through and over which the public are to gain access to the bridge. This use of the term "approaches," as applied to the physical conditions of the *locus in quo*, is no less accurate than the nar-

rower definition contended for by the appellants would be, as applied to a mere taking of lands for bridge approaches without any widening or changing of adjacent streets. In the supposed case the lands taken for the approaches would be a part of the bridge. In the case at bar, some of the lands described as " approaches " were taken for street purposes and are not a part of the bridge. The appellants contend, however, that, as the statute authorizes no taking of lands except by " title in fee    *    *    *    for the purpose of the construction of the said bridge and approaches," the mere assimilation, by the statute, of the practice in the proceeding, to the practice which prevails in condemnation of lands for public streets, does not authorize the city to take any other title than that provided for by the statute; that " title in fee " means title in fee simple absolute; and that the city can take nothing less, although it expressly disclaims any right or intention to take more than a fee burdened with a trust in that part of the lands intended to be taken for street purposes. Many subtle refinements can, of course, be injected into a discussion like this over the precise meaning of technical terms. On the one hand, it can be argued that a fee unqualified by adjectives means the largest estate which the use of the unlimited term implies. On the other hand, it can be argued with equal force that, under our statutory definitions of estates in " fee simple " and " fee simple absolute," a " title in fee " may be an estate that is defeasible or conditional and, therefore, not absolute. The very exhaustive brief of the learned counsel for the appellants illustrates how much learning may be brought to bear upon so simple a subject as the nomenclature of estates in land; but it also suggests the practical importance of fixing our attention upon the real question before us. What is the fair interpretation of the statute and what is the effect of the proceeding instituted and completed under it? The same statute which authorizes the construction of this bridge and its approaches, and the taking of lands for that purpose, provides that, so far as may be necessary, the proceeding shall be con-

trolled by the laws applicable to condemnation of lands for streets, etc. By the plans and maps made and filed by the engineering department of the city, all the parties in interest in this proceeding were informed that lands were to be acquired for two purposes: 1. For the bridge and its actual physical approaches. 2. For the widening and changing of street lines of adjacent streets so as to promote and facilitate access to the bridge. In these conditions it was good economy and, under this statute, correct practice, to institute a single proceeding for both purposes. But the appellants argue that because the streets widened and changed have been called approaches, and because the statute and the papers in this proceeding describe the estate taken by the city as a title in fee, therefore, the city cannot take less than a fee simple absolute title in all of the lands condemned. This argument is more plausible than sound. The streets widened and changed were properly designated as approaches to the bridge, although they were so in a different sense than the lands which were actually necessary as a part of the bridge. The term " title in fee," as used in the statute and in these proceedings, must be construed in the light of the purposes for which the statute was enacted. The lands taken for the bridge and its structural approaches were necessarily taken in fee simple absolute, because their taking was accompanied by a physical entry and appropriation on the part of the city to the exclusion of the public and adjoining owners. Not so, however, in the case of lands taken for widening of streets and changing of street lines, because this was simply a taking of " title in fee " for the purposes to which such lands were to be devoted, viz., for streets in which the adjoining owners and the general public would have the easements pertaining to public streets. That this dual use of the term " title in fee " is not without authority is shown by the fact that by section 970 of its charter the city of New York is authorized to acquire title for the use of the public to all or any lands required for streets, parks, approaches to bridges and tunnels, * * * and by section 990 of the charter it is provided at what time the city shall become

"seized in fee" of lands taken for streets or parks. The authority given in section 970 is to acquire lands *for the use of the public*, although it specifies purposes for which the city must take an absolute title, as well as other purposes for which it can only acquire a title affected by a trust. Section 990 describes the title of the city in lands taken for streets and parks as a "title in fee," although the real title in the one case is quite different from that in the other. If, as a part of the improvement to be made by the building of the bridge, the plans adopted by the city had contemplated the widening of 145th and 149th streets from either extremity to the bridge, it would hardly be claimed that all the lands taken for that purpose would come within the narrow definition of "approaches" or would have to be held in fee simple absolute, because the statute authorized the city to acquire by "title in fee" such lands as might be deemed necessary for "approaches" to the bridge. Yet that is precisely what the argument of the appellants leads to. The broader and, as it seems to us, the better view is that the statute is one under which a single proceeding could be instituted for the double purpose of building a bridge with its structural approaches and at the same time widening and straightening the streets leading thereto. So far as the lands taken were necessary for the first purpose, they were, of course, to be held by the city in fee simple absolute, because its occupation and use thereof would be inconsistent with every other form of legal title, but as to the lands taken for street purposes the title in fee is coupled with the trust that they shall not be used for any other purpose. This view of the statute and the proceeding is consonant, not only with the general duty which rests upon municipalities not to take more lands for specific public purposes than is necessary, but with the attitude of the city in the case at bar. Its unequivocal declaration that it has not intended to take, and does not want, title in fee simple absolute to the lands taken for street purposes herein, supplemented by the decision of this court that the city has no such title, will leave the appellants no ground for

apprehension as to the nature and extent of their easements in the streets which bound their lands.

We, therefore, answer the certified question in the negative and affirm the order of the Appellate Division, with costs.

Parker, Ch. J., Gray, O'Brien, Haight, Martin and Vann, JJ., concur.

Order affirmed.