**STATE ex SCHAEFER v ZANGERLE et**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12984.   Decided Sept 19, 1932

Paul Howland, Cleveland, for plaintiff.
P. L. A. Lieghley, Cleveland, and E. P. Westenhaver, Cleveland, for defendants.
W. George Kerr, Cleveland, and Henry S. Brainard, Cleveland, for City of Cleveland Amicus Curiae.

LEVINE, PJ.

The court found it profitable to quote the major part of the allegations of the plaintiffs petition because the language reciting the history of the erection of the Lorain-Carnegie Bridge, and which led to the present controversy is so clearly set forth, as to decisively present the issues which this court is called upon to determine.

It will be seen from a perusal of the plaintiff's petition that the bond issue authorized by the vote of the people of Cleveland was:

"* * * for the purpose of paying the cost and expenses of erecting a bridge with the necessary approaches thereto, from a point at or near Lorain Avenue, across the valley of the Cuyahoga River to a point at or near Central Avenue. * * *"

Two bond issues were submitted to and approved by the people of Cleveland, one for Seven Million Dollars, for the purpose of paying the cost and expense of erecting the Bridge with the necessary approaches thereto, and the other bond issue in the sum of One Million Dollars was for the purpose of paying the cost and expenses of establishing an extension of Lorain Avenue, a County Road, from a point at or near Lorain Avenue across the valley of Cuyahoga River to a point at or near Central Avenue in the City of Cleveland. The proceeds of the second bond issue were entirely exhausted in the acquisition of lands gen-

erally lying in the Valley of Cuyahoga River, whereby a right of way was acquired connecting Lorain Avenue with Central Avenue. The proceeds of the first bond issue in the sum of Seven Million Dollars were not all exhausted and it is conceded that there remains in that fund a balance of about Eight Hundred Thousand Dollars. The County Commissioners propose to issue bonds in a sum approximately $250,000.00 to be taken out of the balance of Eight Hundred Thousand Dollars for the purpose of building the necessary approaches to Lorain-Carnegie Bridge in the manner described in the plaintiff's petition.

The gist of the plaintiff's contention is to the effect that any part of the proceeds of the Seven Million Dollar Bond Issue cannot be used for any such purpose, as the contemplated improvements as now planned are not in fact approaches. The language used for the submission of the Seven Million Dollar Bond Issue is broader than the interpretation sought to be given it by the complaining taxpayer. It states "* * * for the purpose of paying the cost and expenses of erecting a bridge with the necessary approaches thereto * * *."

It must follow that if the proposed expenditure complained of comes within the meaning of the phrase "necessary approaches thereto," that the defendants would be authorized to proceed with such expenditures out of the proceeds of the Seven Million Dollar Bond Issue.

We are indebted to counsel for furnishing this court considerable aid as to the definition of the phrase "necessary approaches." Webster's New International Dictionary defines an approach as "A way, passage or avenue by which a place or building can be approached; an access."

Mr. Wilbur Watson, whose firm is the consulting engineer on both the Lorain-Carnegie and Main Avenue Bridges, offered a definition from an engineering standpoint as follows:

"The approaches to a bridge comprise the necessary traffic arteries and adjustment thereof, to develop its maximum traffic capacity."

In the case of In Re Harlem River Bridge, 66 NE, 584, 174 N.Y. 26, the court held:

"The term 'approaches,' as used in Laws 1895, c. 968, authorizing the city of New York to construct an approach from the Harlem River, and to acquire title to the land necessary for the construction of the bridge and its approaches, is applied not only to the physical structures immediately connected with the roadway of the bridge, but to those contiguous and converging streets and avenues, through and over which the public are to gain access to the bridge."

In the case of City of Chicago v Pittsburgh, Ft. W. and C. Ry. Co., 93 NE 307, 247 Ill. 319, 139 Am. St. Rep. 329; Id., 93 NE 309, 248 Ill. 100, the Court discussed the question of what constitutes the bridge and what constitutes an approach, and as the language used in the opinion is very helpful in the matter now before us, we shall cite a part of it. The court said:

"Under the common law, and generally under the statutes in this country, a 'bridge' includes the abutments and such approaches as will make it accessible and convenient to public travel. Ordinarily an 'approach' as the term is used, is considered a part of a viaduct or bridge. The question what is a viaduct proper and what is an approach, where one begins and the other ends, and what is street or highway, as distinguished from an approach to a viaduct or bridge, are more questions of fact than law."

We are content to adopt the definition of approaches offered by counsel as follows:

"The approaches to a bridge comprise the traffic arteries leading to the ends of the bridge proper and such adjustment of the alignments and grades of said arteries in the immediate vicinity of such ends as is necessary to afford the maximum convenience of access and render available to the public the entire capacity of the bridge proper."

The language used in the submission of the Seven Million Dollar Bond Issue to the people of Cleveland which contained the phrase "of erecting a bridge with the necessary approaches thereto" was not accidental. There was a definite purpose in the use of said language. A bridge without adequate approaches, such as to assure the fullest and most convenient use of such bridge would be of little avail and would almost defeat the purpose of its erection. Those who are by law directed and empowered to carry out the will of the people as set forth in the language used in the submission of bond issues are under a mandatory duty not only to build the bridge, but also to build the necessary approaches

thereto in order to afford the fullest use of this monumental structure now known as the Lorain-Carnegie Bridge. A failure on the part of the officers, whose duty it is to carry out the will· of the people so to do, would defeat in the main the principal purpose of the erection of the Lorain-Carnegie Bridge as it must be apparent that the bridge without the necessary approaches would be a useless structure.

In order to determine what are good and "sufficient approaches or ways," the County Commissioners have to consider the nature and character of the bridge proper, the general territory to be served by such bridge and the existing arteries in the immediate vicinity of the bridge. All the contending parties are agreed that the officers now sought to be enjoined are acting in good faith, and that it is merely a question of want of power to make the expenditures. Therefore, the Commissioners having studied the situation as it is conceded, in good faith, and having determined that certain improvements are necessary as approaches to the bridge in order to provide the maximum use. thereof, this court cannot substitute its judgment for the judgment of the County Commissioners.

The question as to what are necessary approaches is a question of fact. The evidence presented to this court consists of the testimony of Mr. Wilbur Watson, famous engineer, plus certain maps and blueprints. No other evidence was offered on the subject of what are necessary approaches. Therefore, the evidence is conclusive that the improvements which the Commissioners regard as necessary approaches, and of which the plaintiff is complaining, are in fact necessary approaches.

We conclude, therefore, that the defendants are not only empowered to proceed with the improvements sought to be enjoined, but also that they are under a mandatory duty to proceed with the same, as a failure to construct the necessary approaches would result in a woeful waste of public funds which were expended in the erection of the bridge proper. The court is of the opinion that this duty should be exercised with all reasonable promptness so as to make for a unified Cleveland.

The petition for injunction will be denied and a decree is entered in favor of the defendants. A journal entry will be drawn accordingly.

WEYGANDT and VICKERY, JJ, concur.