TERRELL, Justice.
This appeal is from a decree of the Circuit Court of Lee County validating an issue of Bridge and Causeway Revenue Bonds for the purpose of constructing a bridge and causeway across San Carlos Bay between Punta Rassa and Sanibel Island in Lee County, Florida. The authority to issue said Bridge and Causeway Revenue Bonds, hereinafter referred to as revenue bonds, and to construct the bridge and causeway is agreed to reside in Chapter 159, Florida Statutes, F.S.A.
Petition to validate said revenue bonds was filed December 29, 1960. It prayed for an order to show cause and a notice directed to the State of Florida and the several property owners, taxpayers, citizens and others claiming or having any right, title or interest in property to be affected by the issuance of said revenue bonds or to be affected in any way thereby, requiring all such persons and the State of Florida, through the State Attorney of the Twelfth Judicial Circuit to appear at a time and place within said circuit to be designated in such order to show cause why the prayers of the petition should not be granted and all proceedings relative to the issuance of said revenue bonds be validated and confirmed as prayed for.
Order to show cause was issued and published as required by law. Answer of the state attorney on behalf of the state was filed January 11, 1961, admitting the authority of Lee County to issue revenue bonds under Chapter 159, Florida Statutes, F.S.A., for the purposes stated in the petition but, says the state attorney in his answer, said petition is defective for the following reasons: (1) The county is without power to covenant in said resolution that it will from moneys derived from sources other than ad valorem taxes pay all the operating expenses of said bridge and causeway to the full extent that the revenues derived from said bridge and causeway, after certain required payments have been fully made, are insufficient for such purpose; (2) that the estimated revenues to be derived from the ownership and operation of said bridge and causeway will be sufficient to pay the principal and interest on the revenue bonds herein sought to be validated, and to make the payments into the reserve and sinking funds and all other payments provided for in said resolution, and that as a consequence the issuance of-said revenue bonds is illegal, null and void; (3) that the revenue bonds, herein sought to be validated, constituted an indebtedness of the-County of Lee and are “bonds” within the meaning of Section 6, Article IX of the Constitution of Florida, F.S.A., and the county lacks the power to issue said revenue bonds absent their approval at an election in which a majority of the qualified electors of said county who are freeholders participate.
The answer of the state attorney prayed that the court require strict proof of all matters and things set forth in the petition *336 and consider all matters of law set forth therein.
The response arid objections of certain taxpayers and citizens to the order to show cause was filed January 26, 1961. It raised objections to the petition to validate that were similar to those raised in the answer of the state attorney. Then it challenged the validity of a certain contract made by the Board of County Commissioners of Lee County with Kinzie Brothers Steamer Line, as well as certain other agreements made between the Board of County Commissioners of Lee County and Robert S. Baynard, both of which will be discussed later in this opinion.
Then the response of the taxpayers and citizens challenges that part of the resolution of the Board which provides:
“The County covenants and agrees with the holders of said bonds that it will, from moneys derived from sources other than ad valorem taxes, pay all the operating expenses of said Bridge and Causeway to the full extent that the revenues derived from said Bridge and Causeway, after all required payments under paragraphs (1) to (3), inclusive, of this subsection (C) above have been fully made, are insufficient for such purpose. Such covenant shall not, however, be deemed to create any lien on such funds derived from sources other than ad valorem taxes, nor prevent the County from pledging hereafter any of such funds.”
It is contended that this language shows that Lee County purports to obligate itself to pay the operating expenses of the project in the event insufficient funds are left after making certain other payments listed in the resolution and, therefore, on the face of said resolution, it is shown that the proposed project will not be entirely self-liquidating and hence would necessarily be illegal under Chapter 159, Florida Statutes, F.S.A.
On the issues made by the pleadings and the exhibits, a hearing was held January 30, 1961, oral arguments were heard upon the validity of the proposed bond issue. The state attorney did not appear at this hearing. The court took under advisement the questions of law raised and scheduled an additional hearing for February 27, 1961, at which testimony could be taken if desired. By agreement of counsel for all parties to the cause, the case was submitted to the court for decision at the second hearing without taking any testimony on the questions of law or fact raised by the pleadings and exhibits. We consider this as equivalent to submitting the case to the court on the issues made by the pleadings.
Examination of the questions raised by the pleadings and exhibits discloses that the controlling questions raised were in the main questions of law and did not require the taking of testimony to support or refute them. In submitting the case to the chancellor without testimony, the parties evidently took this view and the chancellor followed accordingly. In this posture the case is controlled by the same rule as any other case in equity. Absent error shown the chancellor should be affirmed.
February 27, 1961, the chancellor entered final decree validating the revenue bonds and on March 15, 1961, appeal was prosecuted from the final decree.
It is first contended that the revenue bond issue which is proposed to be validated is invalid because the project that said revenue bonds are to pay for is not solely self-liquidating as required by Chapter 159, Florida Statutes, F.S.A.
Casual reading of the title to Chapter 28045, Acts of 1953, now Chapter 159, Florida Statutes 1959, F.S.A., will leave no doubt that said act was designed to authorize counties and municipalities to finance certain self-liquidating projects without incurring other indebtedness to pay the cost of such projects. The act also provided that no debt of any such county or municipality shall be incurred in the exercise of any powers granted by said act.
*337 Section 159.02(5), Florida Statutes, F.S. A., defines the essentials of a self-liquidating project as follows:
“A project shall be deemed ‘self-liquidating’ if, in the judgment of the governing body, the revenues and earnings thereof will be sufficient to pay the cost of maintaining, repairing and operating the project and to pay the principal and interest of revenue bonds (as hereinafter defined) which may be issued to pay the cost of such project or improvements thereof.”
The Board of County Commissioners, hereinafter referred to as the Board, is the governing body of the county, and by Chapter 159, Florida Statutes, F.S.A., is authorized to determine when and under what circumstances such projects as are contemplated under said act may be undertaken, to execute contracts for the performance of said projects and issue bonds to pay for them. Pursuant to authority vested in the Board by said act, it did on the 7th day of December, 1960, adopt a resolution which among other things recites that it proceeds from power granted the Board by Chapter 159, Florida Statutes, F.S.A., and that the recitations therein with reference to cost and other aspects of the project are based on estimates made by Caribbean Engineers and Robert H. Matts and Associates, engineers of Fort Myers, reviewed by Ford, Bacon & Davis, Inc., engineers of New York City filed in the office of the Clerk of the Circuit Court. The resolution finds:
“(A) That it is deemed necessary and desirable and in the best interests of the County of Lee and its inhabitants that said County construct a Bridge and Causeway from the operation of which said County shall derive revenues.
“(B) That said revenues are not pledged or encumbered in any manner, and it is deemed necessary to pledge such revenues to the payment of the principal of and interest on the Bridge and Causeway Revenue Bonds issued pursuant to this resolution.
“(C) That said revenues to be derived in each year hereafter from the operation of said Bridge and Causeway will be sufficient to pay all of the principal of and interest on the Bridge and Causeway Revenue Bonds authorized by this resolution, as the same shall become due, and all reserve, sinking fund or other payments provided for in this resolution, including maintaining, repairing and operating same.
“(D) That the principal of and interest on the Bonds to be issued pursuant to this resolution and all of the reserve, sinking fund and other payments provided for in this resolution, will be paid solely from the revenues derived by the County from the operation of said Bridge and Causeway and the Bonds issued pursuant to this resolution shall not constitute a lien upon said Bridge and Causeway, or any part thereof, or upon any other property whatsoever of the County of Lee, except such revenues.”
The questions raised and determined by the chancellor in this case cannot be appropriately disposed of except that they be-construed in the light of the applicable provisions of Chapter 159, Florida Statutes, F.S.A., the resolution of the Board as quoted from, and the decisions of this court adjudicating cases in which similar projects, were involved. Under Chapter 159, Florida Statutes, F.S.A., the Board cannot contract for other than a self-liquidating project.
In support of their contention that the project is not self-liquidating appellants first challenge the Kinzie agreement. Kin-zie Brothers had an agreement for the operation of a ferry franchise along the line where the proposed bridge and causeway is to be constructed. Lee County agreed to pay Kinzie Brothers $30,000 for their ferry franchise to be retired when the *338 bridge is completed and operation commenced. It is clear from reading the Kin-zie agreement and the resolution of the Board that the Board purposed to purchase as an item of cost, retire the Kinzie ferry franchise and to construct the bridge and causeway over the same or substantially the same area. Appellee says that the Kinzie agreement does no more than implement Chapter 159 and Section 1.02(E) of the resolution, which was authorized by the resolution in that cost includes “the acquisition of land or interests therein or any other properties deemed necessary or convenient for the project.” From a reading of the resolution and the agreement it abundantly appears that they are inseparable and that the sums due under the agreement may be traced to the proceeds of the sale of the bonds and thence to the revenues of the project. It is certain that the agreement was inoperative if the bridge and causeway contract failed. Section 159.03(4), Florida Statutes, F.S.A., authorized this purchase.
The Baynard agreement was another effort on the part of the Board to implement the resolution and thereby take care of other elements of cost of the project. Chapter 159 and Section 1.02(E) of the resolution in terms provide that the Board may undertake “such other expenses as may be necessary or incident to the financing * * * ” It accordingly appears that the Baynard agreement should be read in the light of Section 159.02(13) and Section 1.02(E) of the resolution, both of which have to do with "costs” and cover many factors. The Baynard agreement was part of the overall plan of financing the project. Its meaning and vitality depended on being read with Chapter 159 and the resolution of the county commissioners. We cannot see that said agreements of the Board and obligations of the county under them create a debt of the county in violation of the pertinent provisions of Chapter 159, Florida Statutes, F.S.A., which include a wide variety of elements.
Appellants next assault the resolution of the Board in that it is alleged to provide that the covenant of the county to pay, from moneys derived from sources other than ad valorem taxes, all the operating expenses of said bridge and causeway to the full extent that the revenues derived from said bridge and causeway after all required payments have been fully made, are insufficient therefor, is inconsistent with and negates the finding of the Board that the revenues derived from the project will be sufficient to carry the expense of the project and service the bonds.
Attorney for appellee admits this apparent inconsistency but says it is not real because the remaining sentence of the paragraph provides: “Such covenant shall not, however, be deemed to create any lien on such funds derived from sources other than ad valorem taxes, nor prevent the county from pledging hereafter any of such funds.”
For this reason, contends appellee, said funds are not pledged to any such use and are not budgeted or set aside for such use. Nor does the resolution impose a lien on such funds. Unless appellants can say that the county has by said resolution absolutely obligated itself to use such funds for operation and maintenance of the project in the event of a deficiency of revenue, their argument is without merit. It follows that since no lien is imposed for these purposes, and since the county is not foreclosed from hereafter pledging any of such funds to any lawful purpose of its choosing, no liability on the part of the county, direct, indirect or contingent in relation to such funds exists. The only position the Board can take, says appellee, is that to which it has lawfully bound the county to finance the project from the revenues of the project. This court has approved contracts very similar to the one here in State v. City of West Palm Beach, Fla.1960, 125 So.2d 568; State v. City of Coral Gables, Fla.1954, 72 So.2d 48; Welker v. State, Fla.1957, 93 So.2d 591, and Wolfe v. City of Fort Lauderdale, Fla.1950, 47 So.2d 781, 782, wherein we said:
*339 “The answer to this question is that the evidence shows that the revenues derived from the golf course and clubhouse will be ample to service the Revenue Certificates, pay the cost of operating the facilities and create a surplus for other purposes. At any rate, if such a contingency should arise and any attempt should he made to pay the cost of such administration by the imposition of ad valorem taxes, it would then be time to raise this question by suit to enjoin the taxes.”
In response to appellants’ contention that the county will be compelled to pay astronomical sums for repairs to the project in the event of hurricane or other calamity, it is sufficient to say that Section 3.04(G) of the resolution provides:
“Insurance. That it will at all times cause said Bridge and Causeway, and all parts thereof, to be insured in a responsible insurance company or companies against loss or damage by fire, lightning, tornado, winds, earthquake, flood, rising waters, collapse, riot, strike, civil commotion, collision, malicious damage and explosion, all to the extent insurance is obtainable from time to time against any one or more of such risks and in each case to the greatest amount obtainable, not exceeding the full insurance value, subject to deduction from such loss or damage (except in case of total loss) of not more than one per centum (1%), unless the Consulting Engineer shall approve a higher deduction, not exceeding ten per centum (10%): provided, however, that the aggregate amount of insurance covering the Bridge and Causeway need not exceed the principal amount of Bonds outstanding from time to time. The proceeds of any and all such insurance received by the County shall be held by the County as security for the Bonds until paid out as hereinafter provided.”
This court has validated many bonds for similar projects carrying a like provision for insurance, the cost of which is paid from revenues of the project and not from general revenues of the county.
It is next contended that Chapter 159, Florida Statutes, F.S.A., is defective in that it establishes no priority or order under which revenues collected from the operation of the project are to be used.
This appears to be the first time this question has been raised. Section 159.10(2),, Florida Statutes, F.S.A., is relied on to support this contention, but if the act so requires, the question would seem to be premature. It is true that § 159.10, Florida Statutes, F.S.A., carries certain specifications with reference to handling rates, fees, rentals, tolls or other charges for use of the project, but it is reasonable to assume that when the appropriate time arrives, the governing authority of the project will take proper steps to perform their duty in this.
It is last contended that the proposed revenue bonds sought to be validated are such that they require an approving vote of the freeholders as authorized by Section 6, Article IX of the Constitution of Florida.
What has been said herein shows conclusively that the revenue bonds proposed to be validated are not supported by the general taxing power but are supported entirely by revenues from the project and are not bonds as contemplated by Section 6, Article IX of the Constitution of Florida. Chapter 159, Florida Statutes, F.S.A., the resolution of the Board and the face of the proposed revenue bonds all negate the theory that said bonds are supported by any funds except the revenues from the project. Chapter 159, Florida Statutes, F.S.A., the resolution of the Board and the face of the bonds repeatedly provide that they are not obligations of the county and that no ad valorem tax can be imposed to finance them. Any bond issue supporting other than a *340 self-liquidating project would be invalid on its face.
The judgment appealed from is accordingly affirmed.
Affirmed.
ROBERTS, C. J., and DREW and THORNAL, JJ., concur.
HOBSON, J., concurs in judgment with opinion.
THOMAS, J., and McLANE, Circuit Judge, dissent.