346 So.2d 58 (1977)
Marcelle McGOVERN et al., Appellants,
v.
LEE COUNTY, Florida, Appellee.
No. 49344.
Supreme Court of Florida.
May 2, 1977.
*60 James H. Seals of Moorey, Seals & Garvin, Fort Myers, for appellants.
James T. Humphrey, Jr., and Daniel U. Livermore, Jr., of Freeman, Richardson, Watson, Slade, McCarthy & Kelly, Jacksonville, for appellee.
Roger E. Berres of Roberts, Watson, Bright & Adams, Fort Myers, and William B. Lawless of Hawkins, Delafield & Wood, New York City, for City of Sanibel, amicus curiae.
OVERTON, Chief Justice.
This is an appeal from a final judgment of the Circuit Court for Lee County validating the Lee County, Sanibel Bridge Improvement Revenue Bonds. We have jurisdiction.[1]
This is a unique revenue bond proposal which would require the users of a bridge that has paid for itself to now pay for substantial improvements to several roads, one of which is over twelve miles removed from the bridge, and for the construction of recreational facilities. We reverse the validation of the bond issue because the record fails to establish that the majority of improvements will actually make a significant contribution to the traffic over the bridge, and the toll to pay these new proposed revenue bonds would place an undue burden on the residents and visitors to Sanibel Island. Tolls as well as taxes must be fairly imposed.
The sparseness of the record in this cause has created some substantial problems for this Court in trying to understand the projects and their relation to the bridge. There is generally insufficient detail as to the amount of costs of these "improvements," and as for the City of Sanibel's portion of the project, there are no plans other than the generalities contained in this opinion as to how the City intends to use the money.
The following are the facts beginning with the original financing and construction of the Sanibel Bridge. In 1961 this Court affirmed the validation of revenue bonds issued by Lee County to finance a self-liquidating project, the construction of a toll bridge and causeway across San Carlos Bay connecting Sanibel Island to Punta Rassa. See Sanibel-Captiva Taxpayers' Association v. Lee County, 132 So.2d 334 (Fla. 1961). The Sanibel Island Bridge and Causeway has paid for itself, and the tolls now being collected are unencumbered except for operation and maintenance costs. The present toll is $1.50, and the bridge is the only vehicular ingress and egress for residents of the island.
Appellee Lee County and amicus curiae City of Sanibel wish to issue new revenue bonds and to use the tolls from the bridge to (1) finance the improvement of six roads by which mainland traffic may gain asserted improved access to the bridge, and to (2) finance the construction of recreational, sanitary facilities, and street improvements on Sanibel and Captiva Islands. The proceeds from the sale of the bridge improvement bonds would be $18,000,000, and the tolls from the bridge would be pledged to liquidate the bonds. By interlocal agreement, Lee County and the City of Sanibel have decided that seventy-four percent of the proceeds would go to the "Mainland Road Improvements" while the remaining twenty-six percent would go to the "Sanibel Projects."
The bond resolution passed by the Board of County Commissioners of Lee County described the two projects as follows:
"The economic progress and well being of the people of the Issuer depend in large measure upon the many visitors and residents of other areas who come to the Issuer, including particularly Sanibel and *61 Captiva Islands, to enjoy its beneficial climate, scenic beauty, natural resources and the many man-made attractions, sports and recreation opportunities.
"(1) It is necessary and desirable to adequately provide for the safe, orderly flow and circulation of traffic through and over the Bridge by acquiring and constructing extensions, additions and improvements to the bridge and causeway facilities consisting of the following approaches and approach roads on the easterly side of the Bridge (the `Bridge Improvements'):
"Colonial, SR 867 (McGregor) to SR 82 Synchronization of U.S. 41 traffic signals
SR 869, SR 867 (McGregor) to Colonial Gladiolus Loop Road, SR 867 (McGregor) to Colonial
Cypress Lake Drive  Daniels Road, SR 867 (McGregor) to I-75
SR 867 (McGregor), toll plaza to College Parkway
"(2) It is further necessary and desirable to construct and acquire certain approaches and approach roads to the Bridge, and extensions, additions and improvements to existing approaches and approach roads to the Bridge and to construct and acquire certain public recreation facilities on Sanibel and Captiva Islands, which are more particularly described in the Interlocal Agreement and referred to therein as the `Sanibel Projects.'
"(3) All of the above capital improvements are necessary and desirable in order to preserve and protect the public health, safety and welfare of the inhabitants of the Issuer."
The darkened routes on the enclosed map of Lee County show the location of the mainland roads to be improved. The proposed path of I-75, not part of the planned bridge improvements, is also shown to illustrate that Colonial (No. 1) and Cypress Lake Drive (No. 5) are asserted to be connectors to feed to the bridge traffic from the interstate when it is constructed. U.S. 41 is identified by a double line. It is presently the main north-south ingress and egress route through the city, carrying 60,000 vehicles daily. It is part of the proposed improvements to the extent of synchronization of U.S. 41 traffic signals.

[See following illustration on p. 62]
*62 
*63 The plans for the Sanibel Projects, for which twenty-six percent of the funds are to be used, are in the words of the bond resolution "more particularly described in the Interlocal Agreement ...":
"SECTION 3. SANIBEL PROJECTS.
The County and City hereby agree that it is necessary and in the public interest of the citizens of both the County and the City that the following described public improvements be constructed and acquired, all to be located on Sanibel Island ...:
"1. Acquisition and improvement of property for public usage
Beachfront Parks
Near Lighthouse End of Island
Mid Island
Near Bowman's Beach Access Road Interior Parks
"2. Construction and improvement of roadways and appurtenant facilities for public safety
Acquisition of Right-of-way
Extension of Gulf Drive
Parallel Roadway
Construction of New Roadways
Improvement of Existing Roadway System
Establishing Turn Lanes
Improving Critical Intersections
Building up Dangerous Shoulders
Straightening Dangerous Curves
Replacing Inadequate Culverts
"3. Establishment of Facilities for Public Usage
Building Public Sanitary Facilities
Comfort Stations
Dumping Station for Travel Vehicles
Building Public Recreation Facilities
Boat Ramp
Parking Facilities"
* * * * * *
This is the only explanation of the Sanibel Projects to be found in the record.
Appellee Lee County sought and obtained from the circuit court validation of the bridge improvement bonds. No parties appeared in the trial court proceedings to offer evidence in opposition to this validation. Appellants Marcelle McGovern, James T. Nix, and Hannah Davis, who are all citizens, property owners, and taxpayers of Lee County, intervened after the final judgment of the circuit court and prosecuted this appeal. We have allowed the City of Sanibel to file a brief as a friend of the Court.
Appellants contend that Lee County and the City of Sanibel are without authority to issue bonds to construct either the road improvements or the Sanibel projects, and urge that we reverse the judgment of the circuit court. We agree that on this record the validation of the revenue bonds must be reversed.

Mainland Road Improvements
The authority of counties and municipalities to issue revenue bonds is given in the Revenue Bond Act of 1953, Chapter 159, Part I, Florida Statutes. Section 159.08(1) of the Act authorizes counties and municipalities to issue bonds for paying all or part of the costs of a self-liquidating project, or of improvements to such a project. The word "project" is defined to include bridges and causeways, Section 159.02(4), Florida Statutes, and the words "bridge" and "causeway" are both defined to include "... the approaches thereto and approach roads." Sections 159.02(7), (8), Florida Statutes. Thus under Chapter 159, the Lee County, Sanibel Bridge Improvement Bonds may be issued to pay the cost of improving the roads only if they are "approaches" or "approach roads" to the bridge and causeway.
Chapter 159 does not, however, provide a definition of "approaches" or "approach roads," and no Florida case construes those terms as used in the Act. In the absence of such legislative guidance, appellants urge this Court to join certain other states in adopting a narrow definition of approaches and approach roads. See, e.g., In re Harlem Bridge, 174 N.Y. 26, 66 N.E. 584 (1903), and Shope v. City of Des Moines, 188 Iowa 1141, 177 N.W. 79 (1920). The definition appellants would have us adopt is basically *64 the one given by an Ohio appellate court in State ex rel. Schaefer v. Zangerle, 43 Ohio App. 30, 182 N.E. 644 (1932):
"... `[A] way, passage, or avenue by which a place or building can be approached; an access.'
* * * * * *
"... `The approaches to a bridge comprise the traffic arteries leading to the ends of the bridge proper and such adjustment of the alignments and grades of said arteries in the immediate vicinity of such ends as is necessary to afford the maximum convenience of access and render available to the public the entire capacity of the bridge proper.'" 182 N.E. at 646.
Were we to adopt this definition, all but one of the roads in the instant case would be excluded as approaches or approach roads as a matter of law. Only SR 867 (McGregor), identified as priority 6, leads to the end of the bridge proper. The others cannot reasonably be said to be within the immediate vicinity of the bridge. Indeed, according to testimony, one road, Colonial, comes no closer than twelve miles to the bridge.
Appellee Lee County contends that the question as to whether the roads are either approaches or approach roads is basically one of fact and has already been answered affirmatively by the trial court. According to appellee, we are bound by the trial court's findings.
Both Lee County and the City of Sanibel maintain that appellants' restrictive definition of the terms "approaches" and "approach roads" is not supported by case law, and offer different interpretations of the cases cited by appellants. Basically, however, appellee and the City fault appellants' insistence that approaches and approach roads must by definition be within the immediate vicinity of the bridge. Instead, appellee contends that we must look to the road's function in relation to the bridge to determine whether it is an approach or approach road, and quotes with approval the testimony of consulting engineers in the Zangerle case:
"... `The approaches to a bridge comprise the necessary traffic arteries and adjustment thereof, to develop its maximum traffic capacity.'" 182 N.E. at 646.
In the Revenue Bond Act of 1953, the Legislature authorized municipalities and cities to pay for the cost of constructing and improving self-liquidating projects, in this case a toll bridge and causeway. Moreover, the Legislature chose to extend the concept of a bridge or causeway project to include approaches and approach roads.
The Legislature was not required to make that extension. It could have limited the issue of revenue bonds to fund the construction or improvement of only the bridge proper. On the other hand, the Legislature could have allowed the bonds to be issued for projects totally unrelated to the bridge or causeway, including the improvement of all roads within the municipality or county.
The Legislature did neither of these. In attempting to determine what roads may serve as grounds for the issuance of the revenue bonds, we find that the Legislature did not intend to make an unlimited extension of the concept of a bridge or causeway project when it included as part of that concept the approaches and approach roads to the bridge or causeway. In short, we conclude that some roads  as a matter of law  are not "approaches or approach roads" within the meaning of the Revenue Bond Act of 1953.
Inherent in the legislative scheme for funding self-liquidating projects is the principle that those who directly benefit from the project should bear a substantial portion of the cost and that those who bear the substantial cost should benefit from the expenditure of money on the project. To allow bridge tolls to finance improvements of approaches and approach roads to the bridge does not violate this principle, for those paying the tolls will benefit by having access to the bridge made more convenient. We conclude that in determining if a road is *65 an approach to a bridge it is necessary to ask about the road's function, not its location.
Essential to this finding is the factor that the amount of traffic the road feeds to the bridge determines whether a road functions as an approach to the bridge. A road or a segment of a road is an approach or approach road if a significant portion of its traffic moves onto the bridge or causeway, or if a significant portion of the traffic moving across the bridge or causeway came from the road or road segment.
Although this is a functional view of approaches and approach roads, it is not incompatible with the proximity test suggested by appellants. The closer an access road is to a bridge or causeway, the more likely a significant portion of its traffic will use the bridge. Indeed, in most cases the functional test need not be relied on where the roads to be improved are within the immediate vicinity of the project. But where a governmental body contends that revenues from a toll bridge or causeway should fund improvements to roads distant from the facility, the functional test should be used. This functional approach will ensure that the benefits and burdens of the proposed project will be fairly imposed.
The record reflects that all but one of the roads, McGregor from the toll bridge to SR 869, are distant from the bridge and causeway proper. As noted earlier, Colonial comes no closer to the bridge than twelve miles. Also, according to the map submitted by appellants, SR 869 comes no closer than three miles to the bridge, Gladiolus Loop Road no closer than five miles, and Cypress Lake Drive no closer than eight. And finally, the synchronization of lights on U.S. 41 to facilitate the flow of the 60,000 vehicles that travel the road each day is to be along a segment that comes no closer than ten miles to the bridge.
The record on appeal does not reflect, however, any attempt in the court below to establish the amount of traffic the roads in this case carry or will carry to the Sanibel bridge and causeway. Although it appears that one of the roads in the project is an approach road, we reverse the trial court's finding as to all of the roads for failure to apply an appropriate standard.

Sanibel Projects
Chapter 418, Florida Statutes, authorizes municipalities and counties to create playgrounds and recreational centers. Under Section 418.07, Florida Statutes, a municipality or county may issue bonds to pay for the establishment of such facilities:
"The governing body of such municipality or county may, pursuant to law and in conformity with the constitution of this state, provide that the bonds of such municipality or county may be issued in the manner provided by law for the issuance of bonds for other purposes, for the purpose of acquiring lands or buildings for playgrounds, recreation centers and other recreational purposes and for the equipment thereof." [Emphasis added]
Appellee contends that Section 418.07, Florida Statutes, combines with the Revenue Bond Act of 1953, Chapter 159, to authorize the issuance of the bonds for the Sanibel recreational projects, and that the bonds need only comply with the technical, procedural requirements of Chapter 159 in order to be valid.
Appellants argue, however, that in order for Section 418.07, Florida Statutes, to authorize the issuance of bonds "in the manner provided by" Chapter 159, the project must satisfy both the substantive and procedural requirements of that chapter. In short, according to appellants the recreational projects must be self-liquidating. We note that a number of the "Sanibel Projects" are not recreational in nature but road improvements.
As we noted earlier in this opinion, inherent in the scheme of Chapter 159 for funding self-liquidating projects is the principle that those who substantially benefit from the project should bear the cost.
In the instant case, using a Chapter 159 bridge as a self-liquidating project to *66 pay for improvements requires a finding of benefit to those who use the bridge, and it is therefore necessary for the appellee to demonstrate a sufficient and direct relation between the use of the toll bridge and the use of the "Sanibel Projects." If the "Sanibel Projects" are to be financed through the sale of the bridge improvement bonds, the "Sanibel Projects" should to a major extent contribute to the generation of tolls by drawing traffic across the bridge and causeway and onto the island or directly and substantially benefit the users of the bridge.
No island resident or visitor should be required to pay for mainland road improvements or island recreational facilities unless the projects confer a substantial benefit to the users of the bridge or unless a significant portion of the bridge traffic will come from such improvements.
To affirm the validation of the bonds under the record in this case would be to abdicate our responsibility to ensure that the legislative will is followed and would invite abuses in the financing of public projects.
The validation of the Lee County, Sanibel Bridge Improvement Bonds is reversed, and this cause is remanded to the trial court for proceedings consistent with this opinion.
It is so ordered.
ADKINS, BOYD, ENGLAND, SUNDBERG, HATCHETT and DREW (Retired), JJ., concur.
NOTES
[1] Art. V, § 3(b)(2), Fla. Const., and § 75.08, Fla. Stat. (1975).