SUNDBERG, Justice.
We are called upon to revisit the controversy surrounding the proposed validation of Lee County, Sanibel Bridge Improvement Revenue Bonds. In McGovern v. Lee County, 346 So.2d 58 (Fla.1977), we reversed the initial validation of bonds “because the record fails to establish that the majority of improvements will actually make a significant contribution to the traffic over the bridge, and the toll to pay these new proposed revenue bonds would place an undue burden on the residents and visitors to Sanibel Island.”[1] Id. at 60. After a revised bond resolution and second amended complaint, the Circuit Court for Lee County denied validation. The court noted that certain road segments included within the bond issue fully satisfied the definition of “approach road” established in McGovern, but it felt constrained to deny validation to the entire issue because of its belief that it could not rule piecemeal. We have jurisdiction pursuant to article V, section 3(b)(2), Florida Constitution.
The three major issues in this appeal are (1) whether the trial court erred in holding that it could not validate a part of the bond issue and invalidate another part; (2) whether the court correctly applied the test for “approach road” enunciated in McGovern ; and (3) whether the proposed parking facility on Sanibel Island may be funded in part by the proceeds from this bond issue. Appellant maintains that the trial court had authority to validate less than the entire bond issue, but that it erred in interpreting the functional test in McGovern as being two-pronged rather than alternative. Appellees assert that the trial court correctly applied the functional test and that the court lacked authority to validate only a portion of the bonds. For the following reasons, we affirm in part and reverse in part.
Preliminarily, we hold that a circuit court has authority to validate certain portions of a bond issue and invalidate others. The procedure avoids duplicative effort and has been sanctioned in the past. See Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla.1971); State v. Florida State Improvement Commission, 160 Fla. 230, 34 So.2d 443 (1948).
The focal point of this appeal is the question: What is an approach road within the intendment of the Revenue Bond Act of 1953 and sections 159.02(7), (8), Florida Statutes (1977)? In McGovern, this Court formulated a functional, as opposed to locational, test to ascertain whether a road is an approach road. The raison d'etre of the functional inquiry is to assure that the ben *9 efits and burdens of a proposed project fall equitably. Hence, “those who directly benefit from the project should bear a substantial portion of the cost and . . . those who bear the substantial cost should benefit from the expenditure of money on the project.” McGovern, 346 So.2d at 64. The principle is achieved in this case if a significant number of persons paying the bridge toll are benefited by the improvements on the purported approach roads, and if a significant number of persons utilizing these roads contribute to the burden of paying the bridge toll.
The parties to this dispute disagree as to the correct interpretation of the functional test. The test provides:
A road or a segment of a road is an approach or approach road if a significant portion of its traffic moves onto the bridge or causeway, or if a significant portion of the traffic moving across the bridge or causeway came from the road or road segment.
Id. at 65.
Appellant contends that the test is alternative, that is, it must show only that a significant portion of the road’s traffic moves onto the bridge, or that a significant portion of the traffic moving across the bridge came from the road. Appellees argue essentially that both prongs of the test must be satisfied.
We perceive the proper interpretation of the functional test to be somewhat of a hybrid. To characterize a road or road segment as an approach road, there must be some logical and substantial nexus between utilization of the road and the bridge or causeway. The appropriate inquiry is whether a significant function of the road is to serve traffic heading to and away from the bridge. In making this determination, the court must ask itself this question: What is the road really used for? If the road serves only incidentally to ferry traffic to and from the bridge or causeway, it cannot be considered an approach road, even though a large portion of bridge traffic may come from this road.
The trial court had ample evidence to support its finding that the Sanibel road projects, SR 847 from the toll plaza to San Carlos Boulevard, and SR 869 from McGre-gor Boulevard to San Carlos Boulevard fit within the McGovern approach road definition. Percentage figures presented in testimony established that a large portion of the traffic on these road segments was either going to or coming from the causeway. Correspondingly, ample evidence supported the judge’s finding that the other road segments were not approach roads. The court correctly noted that the vast majority of persons using these roads were destined for points other than Sanibel, “thus contributing not one penny to the fine highways they have been using; to the contrary they will be enjoying the benefits paid for by persons using a causeway miles away from their exit.” The functional nexus between these roads and Sanibel bridge was simply too tenuous to justify imposition of bridge tolls to fund their improvement.
Appellees assert that the proposed parking facility on Sanibel cannot be constructed under appellant’s bond financing scheme. They cite section 159.02(25), Florida Statutes (1977), for the proposition that the facility must be self-liquidating. Section 159.02(25) states that “[t]he term ‘parking facilities’ shall mean any facility constructed for the purpose of vehicular parking and the use, operation and occupancy of such parking facilities and for which charges are made.” Due to the invalidity of other segments of the bond issue and the court’s perception that it could not rule piecemeal, the trial judge did not respond to this contention.
We believe that section 159.02(25) contemplates a parking facility different in kind than the proposed Sanibel facility. A parking lot must be self-liquidating pursuant to section 159.02(25) only if it constitutes a separate and distinct project. If the facility is an integral part of a more comprehensive project, such as a bridge and improvements to its approach roads, the facility is without the scope of subsection (25) and independent charges for its use *10 need not be imposed. We previously held in McGovern, and now reaffirm, that the Sani-bel parking facility is an integral part of this financing scheme if it bears a direct relation to the use of the bridge and contributes to a major extent to the generation of tolls by drawing traffic across the bridge, or if it directly and substantially benefits the users of the bridge. The evidence adduced at trial is overwhelming that the proposed facility satisfies this test.
Accordingly, the final order of the Circuit Court for Lee County is affirmed as to findings number one, two, and three. The remainder is reversed and the cause remanded for entry of a judgment consistent with this opinion.
It is so ordered.
ENGLAND, C. J., and ADKINS, OVER-TON, HATCHETT and ALDERMAN, JJ., concur.

. For a complete recital of the facts relevant to this appeal, see McGovern.